**Orville J. SPANIER, a/k/a O.J. Spanier, Respondent,**

v.

**TCF BANK SAVINGS, fsb, Appellant.**

No. C9–92–679.

Court of Appeals of Minnesota.

Jan. 26, 1993.

Review Denied March 22, 1993.

Owen L. Sorenson, Suzanne Wolbeck Kvas, Stringer & Rohleder, Ltd., St. Paul, for respondent.

David J. Duddleston, Mackall, Crounse & Moore, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and LANSING and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant, TCF Bank Savings (TCF Bank), appeals a jury verdict of $75,000 in favor of respondent Orville J. Spanier. TCF Bank terminated Spanier one year after he was hired. Claiming that he had been promised long-term employment, Spanier sued on the basis of promissory estoppel and breach of implied covenant of good faith and fair dealing, among other theories. We reverse.

## FACTS

Spanier worked as a commercial lending officer for over 20 years at several different banks. In 1986, while Spanier was employed by the Capitol Bank as the executive vice-president, head of lending, TCF Bank interviewed him for a position as a commercial lending officer. Spanier had three meetings to discuss the job opportunity with Theodore R. Novak, TCF Bank's vice-president in charge of commercial lending in St. Paul. Spanier also met with Novak's supervisor, Robert T. Griffore. Novak offered Spanier a job and by letter confirmed a salary of $4,416 per month, three weeks vacation, and promised a review after 12 months. There was no written contract for employment or other documentation of the job offer other than the letter and TCF Bank's job application.

Spanier began working for TCF Bank in September 1986. On August 21, 1987, TCF Bank terminated his employment for poor performance and failure to generate enough business. Spanier obtained a position with a South St. Paul bank in February 1988, taking a salary reduction of almost $20,000. Thereafter, he transferred to another bank in St. Cloud. TCF Bank abandoned its regional commercial lending concept in November 1987 because of the credit quality of the existing real estate portfolio.

At trial, Spanier testified he believed that as long as he performed satisfactorily, he would have a permanent job with TCF Bank. He believed TCF Bank had made a long-term commitment to pursue the commercial lending business because Novak said TCF Bank wanted to become a "major player" in the commercial lending field, competing with Norwest Bank and Firstbank. Spanier assumed TCF Bank would need three to five years to develop its commercial lending business. Novak and Griffore did not promise permanent or long-term employment, did not discuss grounds for termination, nor did they make explicit statements about job security. However, Spanier believed he was guaranteed long-term employment.

The trial court denied TCF Bank's motion for a directed verdict. The jury found in Spanier's favor on the basis of promissory estoppel and breach of covenant of good faith and fair dealing. The trial court de-

nied TCF Bank's motion for JNOV or a new trial and TCF Bank appeals.

## ISSUES

1. Did TCF Bank's offer of employment to Spanier constitute a clear and definite promise sufficient to support a promissory estoppel claim?

2. Was there sufficient evidence of a definite offer creating a unilateral contract to support Spanier's claim of breach of implied covenant of good faith and fair dealing?

## ANALYSIS

### I. *Promissory Estoppel*

■ This court has de novo review of legal conclusions. *Jadwin v. Minneapolis Star & Tribune Co.*, 367 N.W.2d 476, 483 (Minn.1985). Whether the evidence is sufficient to raise a fact question for the jury's determination is a question of law to be decided de novo by the reviewing court. *Midland Nat'l Bank of Minneapolis v. Perranoski*, 299 N.W.2d 404, 409 (Minn. 1980) (directed verdict); *Macho v. Mahowald*, 374 N.W.2d 312, 314 (Minn.App.1985) (JNOV), *pet. for rev. denied* (Minn. Nov. 4, 1985).

■ TCF Bank claims Spanier was an at-will employee who was terminated for poor performance. TCF Bank claims the trial court erred by allowing Spanier to proceed to trial on his claim that TCF Bank broke its alleged promise of long-term employment.

■ A person hired for an indefinite time period is an "at-will" employee. *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn.1983). When an employee is employed at will, "the employer can summarily dismiss the employee for any reason or no reason, and * * * the employee * * * is under no obligation to remain on the job." *Id.* Even an offer of "permanent" employment implies at-will employment because "the term being indefinite, the hiring is merely at will." *Skagerberg v. Blandin Paper Co.*, 197 Minn. 291, 294, 266 N.W. 872, 874 (1936).

■ Under the theory of promissory estoppel, however, an employee may recover damages when he leaves one job upon reliance on another employment offer, where the new employer revokes the offer before the employee can perform. *See Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn.1981). Promissory estoppel may be applied where "no contract exists because due to the bilateral power of termination neither party is committed to performance and the promises are, therefore, illusory." *Id.* Section 90 of the Restatement (Second) of Contracts sets out the elements of promissory estoppel:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee * * * and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Restatement (Second) of Contracts, § 90(1) (1981). However, to be enforceable, "the promise must be clear and definite." *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 391 (Minn.1992).

It is undisputed that TCF Bank promised Spanier employment. TCF Bank should have known that Spanier, in reliance upon the job offer, would resign from his job with Capitol Bank. Whether TCF Bank's promise of employment must be enforced for a long duration to prevent injustice, however, "is a legal question for the court, as it involves a policy decision." *See id.* The Minnesota Supreme Court articulated the policy underlying the at-will employment rule in *Pine River*, where it emphasized the importance of the employer's discretion and independent judgment in employment decisions. *Pine River*, 333 N.W.2d at 627, 630; *see also Hunt v. IBM Mid Am. Employees Fed. Credit Union*, 384 N.W.2d 853, 858 (Minn.1986) (at-will employment rule reduces judicial intrusion on employer's discretion). Because the same policy governs in this case, we conclude the at-will employment rule applies to Spanier's claim.

The two Minnesota cases where promissory estoppel was applied in the employ-

ment context differ significantly from this case in the nature of the employer's promise and the facts surrounding the employee's termination. In *Grouse*, the employer revoked its employment offer before the employee commenced work, but after the employee left his prior job and declined another job offer. *Grouse*, 306 N.W.2d at 115–16. In this case, however, Spanier worked for TCF Bank for a year before he was terminated for poor performance. Likewise, in the case, *Eklund v. Vincent Brass & Aluminum Co.*, 351 N.W.2d 371, 374–77 (Minn.App.1984), *pet. for rev. denied* (Minn. Nov. 1, 1984), this court determined the plaintiff had produced sufficient evidence of reliance to defeat summary judgment where the employer's former president submitted a written statement that the plaintiff employee had been hired with the clear understanding that his position would be permanent until his retirement. Here, however, Spanier produced no evidence that TCF Bank made a "clear and definite" promise of long-term employment to overcome the strong presumption of at-will employment and to proceed on a promissory estoppel claim. *See Cohen*, 479 N.W.2d at 391. Therefore, the trial court erred in allowing Spanier's promissory estoppel claim to go to the jury.

## II. *Breach of Implied Covenant of Good Faith and Fair Dealing*

 TCF Bank also asserts the trial court erred as a matter of law in allowing Spanier to proceed to trial on his claim of breach of implied covenant of good faith and fair dealing. As a general rule, there is no implied covenant of good faith and fair dealing in Minnesota. *See Hunt*, 384 N.W.2d at 858. Employees serve at the will of the employer unless there is a contract regarding grounds for discharge.

> Since at least 1936, this court has recognized that "permanent employment," whether expressed in manuals or otherwise, does not change an at-will contract into one of "discharge-for-cause-only" or create an implied covenant of discharge only in good faith.

*Id.* (citations omitted). The *Hunt* court reasoned that a court-imposed duty to ter-

minate employees in good faith would require unwarranted judicial intervention and would improperly restrict the employer's discretion in managing its work force. *Id.*

In a case which determined whether language in an employee handbook evidenced a unilateral contract, creating an oral promise of permanent employment based on an implied covenant of good faith and fair dealing, the supreme court stated:

> [A] promise of employment on particular terms of unspecified duration, if in form an offer, and if accepted by the employee, may create a binding unilateral contract. The offer must be *definite in form* and must be communicated to the offeree.

*Pine River*, 333 N.W.2d at 626 (emphasis added). The *Pine River* court noted further that the employer's "outward manifestations" must clearly evidence the unilateral contract offer, and emphasized that a showing of "subjective intentions" is insufficient proof of a lifetime employment offer. *Id.*

In this case, Spanier failed to show any evidence of an offer for long-term employment "in definite form." His claims were based on his subjective belief and his own inferences that TCF Bank's commitment to the commercial lending business would provide him job security. TCF Bank's statements about developing this new area of business did not constitute a long-term employment offer. Spanier produced insufficient evidence of TCF Bank's promise, as a matter of law. Thus, we conclude the trial court erred in allowing Spanier's breach of implied covenant of good faith and fair dealing claim to go to the jury.

Because we have determined that Spanier's promissory estoppel and breach of covenant of good faith and fair dealing claims should not have gone to the jury, we need not address the issues concerning the jury instructions, the verdict form, or the testimony of the two TCF Bank lending officers who had no personal knowledge of Spanier's employment and termination.

## DECISION

We conclude the trial court erred in submitting Spanier's claims of promissory estoppel and breach of covenant of good faith and fair dealing to the jury, as Spanier did not present evidence that TCF Bank made a clear and definite promise of long-term employment.

Reversed.