# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1248
_____

Rose M. Rankin,                                *
                                               *
                Appellant,                     *
                                               *   Appeal from the United States
         v.                                    *   District Court for the
                                               *   District of Minnesota.
Seagate Technologies, Inc.,                    *
                                               *
                Appellee.                      *

_____

Submitted:  October 19, 2000

Filed:  April 24, 2001
_____

Before WOLLMAN, Chief Judge, BEAM, and MORRIS SHEPPARD ARNOLD,
    Circuit Judges.
_____

WOLLMAN, Chief Judge.

       Rose Rankin appeals from the district court's adverse entry of summary
judgment on her claim under the Family Medical Leave Act of 1993, 29 U.S.C. §§
2601-2654 (1994) (FMLA or the Act), and her common law claim for negligent
infliction of emotional distress.  We reverse and remand.

# I.

We recite the facts in the light most favorable to Rankin, the non-moving party below. Rankin, a senior administrator at Seagate Technologies, Inc., became ill while at work on September 29, 1997. On September 30, her condition worsened to the point that she was vomiting in a work bathroom. She did not report for work on October 1 or on October 2, when she visited her health care provider for a regularly scheduled appointment. Although Rankin was not prescribed any medication or treatment related to her illness during this appointment, she informally discussed her condition with nurses at the clinic and was advised to treat her symptoms with over-the-counter medication. Rankin did not work on Friday, October 3, or on October 6, 7, or 8.

On Wednesday, October 8, Rankin consulted with her nurse practitioner, Lynn Sedlack. Sedlack's notes indicate that Rankin complained of vomiting, coughing, congestion, and sleeplessness. After an examination, Sedlack concluded that Rankin was suffering from a viral illness and prescribed Tessalon Perles (a cough suppressant), Robitussin with codeine (a nighttime cough suppressant), Duratuss (a decongestant), and Proventil (an inhaler). Sedlack also furnished Rankin with a note that stated "may return to work on 10/13." This note was provided to Seagate, on the company's request, on October 15.

Rankin did not work from October 9 through October 16. On Wednesday, October 15, Rankin informed Seagate that she had scheduled another appointment with Sedlack for October 16. At this appointment, Rankin's prescription for Robitussin was renewed, and she was prescribed Nebulizer with Albuterol (an inhaler), Z-Pack (an antibiotic), and Prednizone (an anti-inflammatory). Sedlack also provided Rankin with a note indicating that she "should return to work on 10/20/97," and instructed her to schedule another appointment on October 18 if her condition had not improved. Rankin had additional appointments with Sedlack on October 22 and 24. Although

Sedlack noted some improvement in Rankin's condition between these two visits, she provided Rankin with a note stating "may return to work on 10/27 or 10/28."

Rankin contends that she notified Seagate at the onset of her illness and continued to update the company regarding her condition and the reason for her absences from work. Nevertheless, Seagate fired Rankin on October 16, 1997, citing excessive absenteeism. Although the parties dispute the details of Rankin's employment history with the company, Rankin concedes that she had received two written attendance warnings pursuant to Seagate's progressive discipline policy, and that she was notified in a September 26, 1997, performance evaluation that further absences could result in the termination of her employment.

Rankin thereafter filed suit in district court, alleging violations of FMLA and negligent infliction of emotional distress. The district court granted Seagate's motion for summary judgment, concluding that Rankin failed to produce sufficient evidence indicating that she suffered from a "serious health condition" as defined by the Act. We review the district court's decision to grant summary judgment de novo, and we will affirm only if there are no genuine issues of material fact. Thorson v. Gemini, Inc., 205 F. 3d 370, 375-76 (8th Cir. 2000); see Fed. R. Civ. P. 56(c).

## II.

FMLA allows eligible employees to take up to a total of 12 workweeks of leave per year under various circumstances, including when an employee has a "serious health condition" that renders the employee unable to perform the functions of his or her job. 29 U.S.C. § 2612(a)(1)(D). The definition of a "serious health condition" includes an "illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). The regulations promulgated by the Department of Labor pursuant to the Act further state:

(2) Continuing treatment by a health care provider.
A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
(i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
(A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2).

We have previously observed that although conditions like the common cold or the flu will not routinely satisfy the requirements of a "serious health condition," absences resulting from such illnesses are protected under FMLA when the regulatory tests are met. Thorson, 205 F.3d at 379. Where absences are not attributable to a "serious health condition," however, FMLA is not implicated and does not protect an employee against disciplinary action based upon such absences. Bailey v. Amsted Indus., Inc., 172 F.3d 1041, 1045-46 (8th Cir. 1999).

Initially, we reject Seagate's contention that this case should be analyzed under the familiar McDonnell Douglas burden-shifting scheme. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Although we acknowledge that some courts have utilized a burden-shifting analysis in addressing substantive claims under FMLA, see, e.g., Beno v. United Telephone Co. of Florida, 969 F. Supp. 723, 724-25 (M.D. Fla. 1997), Kaylor v. Fannin Reg'l Hosp., Inc., 946 F. Supp 988, 1000-01 (N.D. Ga. 1996), Oswalt v. Sara Lee Corp., 889 F. Supp 253, 259 (N.D. Miss. 1995), we have

previously observed that a "'serious health condition' should be defined by an objective test that could be applied consistently based on the facts of each case."[1] Thorson, 205 F.3d at 376. We decline to apply the McDonnell Douglas analysis in this setting because, as the Seventh Circuit has observed, "[a]lthough a burden-shifting approach can be useful in discrimination cases as a heuristic, claims under the FMLA do not depend on discrimination." Diaz v. Fort Wayne Foundry Corp., 131 F.3d 711, 712 (7th Cir. 1997). Without belaboring the point, we agree with our sister circuit's conclusion that "[a]pplying rules designed for anti-discrimination laws to statutes creating substantive entitlements is apt to confuse." Id. Accordingly, we proceed as we have in the past to "consider the factors comprising the objective test and the evidence in the record of this case to determine if the District Court was correct in granting summary judgment."[2] Thorson, 205 F.3d at 377.

To meet the requirements of the objective test, Rankin was required to prove (1) that she had a "period of incapacity requiring absence from work," (2) that this period of incapacity exceeded three days, and (3) that she received "continuing treatment by . . . a health care provider" within the period. Thorson, 205 F.3d at 377; Martyszenko v. Safeway, Inc., 120 F.3d 120, 122-23 (8th Cir. 1997) (incapacity required to trigger FMLA protection). Summary judgment was proper if Rankin failed to create a genuine

---

[1]Our analysis in Thorson involved interim regulations promulgated by the Department of Labor pursuant to the Act, whereas this case involves the final regulations. As we observed in Thorson, however, the final regulations "expound upon and rearrange some of the language that appeared in the interim regulations, but they do not change the substance of the rule." Thorson, 205 F.3d at 377. Accordingly, our analysis in Thorson applies here.

[2]We leave open the question of whether a burden-shifting analysis is appropriate for claims under 29 U.S.C. § 2615(b), the anti-retaliation provision of FMLA. Cf. Hodgens v. General Dynamics Corp., 144 F.3d 151, 159-60 (1st. Cir. 1998) (observing that FMLA creates substantive rights and prohibits discrimination based on the exercise of those rights).

issue of material fact as to any of these elements.  See Wilking v. County of Ramsey, 153 F. 3d 869, 873 (8th Cir. 1998).

The district court concluded that Rankin failed to produce sufficient evidence demonstrating that she was incapacitated prior to her October 8 appointment with Sedlack.  The court concluded that the only evidence indicating incapacity during this time period was Rankin's own affidavit that she was "too sick to work" and that the affidavit alone was insufficient to preclude summary judgment.  We respectfully disagree.  Although we agree that Rankin did not produce an overabundance of evidence, we believe that her affidavit testimony that she was "too sick to work," her testimony regarding her conversation with nurses about her condition at her October 2 appointment, and her medical records from the October 8 appointment that showed that she claimed that she had been suffering from the same symptoms (including sleeplessness and fatigue) for a week were, in sum, sufficient to create a genuine issue of material fact regarding her incapacity prior to October 8, 1997.  See Marchisheck v. San Mateo County, 199 F.3d 1068, 1074 (9th Cir. 1999) (holding that a plaintiff's declaration that "I just did not and could not do anything for four or five days . . ." creates "a disputed issue of fact and precludes summary judgment on the issue of 'incapacity'").

We also disagree with the district court's analysis of the "continuing treatment" aspect of Rankin's FMLA claim.  The court concluded that because  Sedlack did not prescribe an antibiotic for Rankin at the October 8 appointment, Rankin could not demonstrate that she received "continuing treatment" between October 8 and October 15 or at anytime prior to her termination.  Although the district court conceded that Rankin could demonstrate "continuing treatment" as of her  October 16 appointment, it found this fact to be irrelevant because Rankin had already been fired.  Under our reading of the relevant regulation, however, FMLA protection applies to periods of incapacity related to a serious health condition and "any subsequent treatment or period of incapacity relating to the same condition" that also involves two visits to a health

care provider or one visit followed by a regimen of continuing treatment. 29 C.F.R. § 825.114(a)(2). Thus, the fact that an employee is "sufficiently ill to see a physician two times in a period of just a few days" is all that FMLA requires for "continuing treatment." Thorson, 205 F.3d at 379. Rankin clearly fulfilled this requirement.

Accordingly, we reverse the district court's grant of summary judgment on Rankin's FMLA claim and remand for further proceedings not inconsistent with this opinion. Likewise, because the district court granted Seagate's motion for summary judgment on Rankin's common law claim for negligent infliction of emotional distress based solely on its conclusion that there was no FMLA violation, we reverse the summary judgment on that claim and remand the claim for further consideration.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.